FRIENDLY, Circuit Judge:
 

 This is an appeal from an'order of the District Court for the Northern District of
 
 *339
 
 New York affirming, with a slight modification, an order of a bankruptcy judge which awarded a debtor, Burneice Turner, damages against her landlord, Kenneth Er-miger, for the conversion of personal property in the leased premises. We reverse the order of the district court, 29 B.R. 419, on the ground that the complaint was not within its jurisdiction. The parties assumed the essential validity of the Emergency Resolution adopted by order in the Northern District to deal with the problem created by the Supreme Court’s decision in
 
 Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), an assumption now justified, so far as this court is concerned, by
 
 In re Gerald Kaiser,
 
 722 F.2d 1574, 1581 (2 Cir.1983), upholding a similar rule of the Southern District of New York.
 

 Turner was the lessee of a bar in Onondaga County, New York, on premises owned by Ermiger. On December 7, 1981, Turner filed a voluntary petition in bankruptcy in the Bankruptcy Court for the Northern District of New York. A trustee was appointed on December 15. On December 23, Turner filed a schedule of property claimed as exempt under § 522(d) of the Bankruptcy Code of 1978. In addition to her interest in anticipated tax refunds for 1981 and various items of business-related equipment and household goods, Turner claimed as exempt a “[contingent cause of action against landlord for conversion of restaurant equipment,” which she valued at $1,475. The exemptions having exhausted the modest estate, the trustee filed a “Report of No Distribution [to Creditors]” on March 23, 1982. On April 14,1982, Turner was granted a discharge from her debts, relieving her of liabilities in excess of $15,000.
 

 On February 23, 1982, two months after she had exempted the cause of action mentioned above, Turner filed a complaint against Ermiger in the bankruptcy court. She alleged that she had been a tenant of Ermiger’s; that “sometime [sic] in the latter part of November or the first week of December 1981”, after the service of an execution from a third party judgment creditor, Ermiger had changed the locks and refused to allow her to enter; and that Ermiger had converted various articles of personal property having a reasonable value of $1,733.95, for which Turner demanded payment. Ermiger answered on the merits. On January 7, 1983, the bankruptcy judge rendered a memorandum decision granting judgment to Turner in the amount of $1,475.00. The complaint made no allegation how the action between Turner and Ermiger was related to or could affect Turner’s bankruptcy proceeding and the opinion of the bankruptcy judge was equally silent on this subject. ■
 

 Ermiger appealed to the district court. The first point in his brief was that the bankruptcy judge “did not have jurisdiction over the subject matter of this proceeding”. In this connection he noted that the action was “not brought by the trustee nor could the result have benefited the bankrupt estate.” Other points concerned the sufficiency of the evidence of the conversion and the value of the property.
 

 The district judge began his discussion of the jurisdictional argument, which he recognized as being properly before him despite Ermiger’s failure to raise it before the bankruptcy judge, see 5 Wright & Miller,
 
 Federal Practice & Procedure
 
 § 1393 (1969), by referring to the provision of 28 U.S.C. § 1471(b), added by the Bankruptcy Reform Act of 1978:
 

 Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.
 
 [1]
 

 He went on to say, in apparent disregard of the extract from Ermiger’s brief quoted above, that “[i]t is plain, and the appellant
 
 *340
 
 does not dispute, that this action to recover converted property of the debtor falls within the scope of the statutory grant of jurisdiction” and that appellant’s contention was that
 
 Northern Pipeline Construction Co.
 
 v.
 
 Marathon Pipe Line Co., supra,
 
 “disabled the bankruptcy court from assuming jurisdiction over the case.”
 

 The district judge answered that argument on the basis of the action taken by district courts throughout the nation, including the Northern District of New York, in adopting an Emergency Resolution. This provides that “[a]ll cases arising under Title 11 and all civil proceedings coming under Title 11 or arising in or related to cases under Title 11 are referred” to the bankruptcy judges and that the bankruptcy judges “may perform in referred bankruptcy cases and proceedings all acts and duties necessary for the handling of these cases and proceedings” with certain exceptions not here pertinent. It then sets out a definition of “related proceedings”, to wit, “those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or a state court,” and gives numerous examples of what are not “related proceedings”.
 

 While the Emergency Resolution permits the bankruptcy courts to conduct “related proceedings”, it seeks to avoid problems under
 
 Northern Pipeline
 
 by stipulating that the bankruptcy judge “may not enter a judgment or definitive order, but shall submit findings, conclusions, and a proposed judgment or order to the district judge.” The district judge must then review any such judgment or order, whether or not any notice of appeal or application for leave to appeal has been filed. In conducting his review, the district judge need not defer to the findings of the bankruptcy judge and may hold a hearing and receive such evidence as he deems appropriate in coming to his decision to accept, reject, or modify, in whole or in part, the order or judgment under review.
 

 It was on the basis of this Emergency Resolution that the district judge rejected Ermiger’s jurisdictional challenge. He reasoned that because Turner’s action fell within the class of “civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district or state court”, it was a “related proceeding”. As such, the district judge concluded, it could be heard in the bankruptcy court, although he would be under no obligation to defer to its findings when reviewing the proposed order or judgment. The jurisdictional issue having been resolved against Ermiger, the district judge then surveyed the evidence. After stating that the Emergency Resolution does not require the district court to withhold all deference to the findings of the bankruptcy judge, he affirmed the order and judgment below with one minor modification.
 

 Ermiger appealed to this court. While he does not question the adequacy of the Emergency Resolution to deal with the problem created by
 
 Northern Pipeline,
 
 he contends that its definition of “related proceedings” is invalid since, as read by the district judge, it would extend the jurisdiction of the district courts to a case having no significant relation to a bankruptcy proceeding. The qualification that the proceeding must be one that “could have been brought in a district court or a state court,” he argues, is no qualification at all, since it is almost impossible to conceive of a suit that could not be brought in one or the other.
 

 We think the difficulty is not with the Emergency Resolution but with the overly literal application given to it by the district judge. Its purpose was to enable the bankruptcy courts and the district courts to exercise the broadened jurisdiction conferred in 1978 by 28 U.S.C. § 1471 consistently with
 
 Northern Pipeline
 
 until corrective legislation could be adopted, not to extend jurisdiction even beyond what Congress had granted. Congress’s reasons for including the “related to” language in 28 U.S.C. § 1471(b) were explained in H.R.Rep. No. 95-595, 95th Cong., 2d Sess. 42-52,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6004-13 (quoting from the report of the Commission on the Bankruptcy Laws of
 
 *341
 
 the United States). Chief among them was the fact that although the bankruptcy courts had in the past exercised jurisdiction over a wide range of proceedings, “a considerable part of a trustee’s litigation to recover assets of the estate must be initiated in some court other than the bankruptcy court.”
 
 Id.
 
 at 6006. It was believed that this bifurcation of jurisdiction over matters obviously pertinent to the bankruptcy case no longer served any identifiable policy objective; indeed, it seemed to promote nothing but delay, inconvenience, and the litigation of abstruse jurisdictional issues, all of which tended to work to the prejudice of the estate. What was needed was a “comprehensive grant of jurisdiction ... over all controversies arising out of any bankruptcy or rehabilitation case.”
 
 Id.
 
 at 6007. There being no reason “why Congress cannot in the exercise of its power under the Bankruptcy Clause of the Constitution confer jurisdiction over all litigation having a significant connection with bankruptcy,”
 
 id.
 
 at 6009, it enacted § 1471(b).
 

 However, as indicated by the last quotation, Congress must have intended to put some limit on the scope of “related to” jurisdiction. As said in 1 Collier, Bankruptcy ¶ 3.01[l][e] (15th ed. 1988), at 3-49:
 

 Conceptually, there is no limit to the reach of this jurisdiction, insofar as the matter involved “arises in or [is] related to” the title 11 case. Situations will undoubtedly arise in which the controversy is so tangential to the title 11 case that a court will hold that the case neither arises in nor is related to the title 11 case. In such cases, the bankruptcy court may decide that the exiguous nature of the relationship between the proceeding and the bankruptcy case is such as to fall without the court’s jurisdiction. The criterion to be adopted in such a situation will undoubtedly be related to a determination of whether the outcome of the proceeding could conceivably have any effect upon the estate being administered.
 

 Turner brought the present action, which she had reclaimed from the estate pursuant to § 522(d), in her own name. There is no suggestion that the proceeds would be turned over to the trustee, or accounted for to him, and the judgment below orders Er-miger to pay the damages directly to her. Failure to recover on the claim against Er-miger could not increase her exemption claim under § 522(d) of the Code since her exemptions had already exhausted the estate. On these facts, there is no showing that Turner’s action against Ermiger had any “significant connection” with her bankruptcy case. It therefore falls outside the scope of § 1471(b), which allows the district courts to conduct civil proceedings “related to” cases under Title 11.
 

 The judgment is reversed with instructions to dismiss Turner’s complaint for want of jurisdiction.
 

 [1]
 

 . Section 1471(c) provided that the bankruptcy court should exercise all jurisdiction thus conferred upon the district court. It was this provision that gave rise to the constitutional controversy decided in
 
 Northern Pipeline, supra.